UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RUFUS WEST,

                        Plaintiff,

v.                                                                Case No. 20-cv-0282-bhl

LT. SWIEKATOWSKI,
CAPT. BAUMAN,
WARDEN SCOTT ECKSTEIN,
and CINDY O'DONNELL,

                        Defendants.

## ORDER SCREENING AMENDED COMPLAINT UNDER 28 U.S.C. §1915A

      Rufus West, an inmate at the Green Bay Correctional Institution who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that defendants violated his constitutional rights in connection with the issuance of an adverse decision on a conduct report that was later overturned by a Dane County Circuit Court judge. The Court screened West's original complaint under 28 U.S.C. §1915A and dismissed it for failure to state a claim because West did not allege that he suffered the deprivation of a liberty or property interest as a result of his 120-day sentence to the "hole" on the overturned conduct report. (ECF No. 10.) The Court allowed West an opportunity to file an amended complaint regarding whether the conditions he was subjected to in the "hole" implicated a liberty interest. (*Id.* at 6.) West has filed an amended complaint (ECF No. 12) which the Court will screen under 28 U.S.C. §1915A.

### Federal Screening Standard

     Under the Prison Litigation Reform Act, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes liberally complaints filed by plaintiffs who are representing themselves. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

## West's Allegations

West's amended complaint reiterates most of his original complaint allegations. He alleges that on January 11, 2017, defendant Captain Baumann knowingly violated his due process rights "when he designated the Conduct Report as a Major reportedly because the charges are designated as a Major Offense by [Wis. Admin. Code §]DOC 303.71(2)." (ECF No. 12 at 2.) West states that charges are not listed under §DOC303.71 and that Baumann's designation of the charges as Major "is abuse of process because his decision is final." (*Id.*)

West alleges that on January 19, 2017, defendant Lieutenant Swiekatowski violated West's due process rights when he denied West's witness request for the conduct report. West states that this was abuse of process because he had no defense without his witnesses and there was no challenge to the denial. West further alleges that, on or about March 2017, defendant Eckstein violated his rights by refusing to intervene in Baumann's and Swiekatowski's alleged misconduct, thereby condoning their misconduct.

2

West alleges that on May 3, 2018, Dane County Circuit Court Judge Josann M. Reynolds overturned West's conduct report in Case No. 17CV1564. Judge Reynolds held that prison officials violated West's constitutional right to present witnesses and issued a rehearing with his witnesses. At the May 25, 2018 rehearing, West was found not guilty of the charges based on his witnesses' testimony and the conduct report was dismissed.

West claims Swiekatowski, Baumann, Eckstein, and O'Donnell knowingly violated his constitutional rights by "abusing the process in issuing him the conduct report[.]" (*Id.* at 3.) As a result, he says that was subjected to conditions of confinement, "such as being sentenced to 120 days in the hole in a freezing cell with poor freezing air blowing through the vent 24 hours a day, he was strip searched three times, the parole board denied him parole and he was denied a transfer to a lower security prison which has different things favorable to prisoners, he was denied Islamic services." (*Id.* at 3-4.) West seeks $1,000,000 from each defendant.

**Analysis**

A prisoner challenging the process he was afforded in a prison disciplinary proceeding must meet two requirements: (1) he has a liberty or property interest that the state has interfered with and (2) the procedures he was afforded upon that deprivation were constitutionally deficient. *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007) (citing *Rowe v. DeBruyn*, 17 F.3d 1047, 1053 (7th Cir. 1994)).

"A prisoner's liberty interest, and incumbent entitlement to procedural due process protections, generally extends only to freedom from deprivations that 'impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prisoner life." *Lekas v. Briley*, 405 F.3d 602, 608 (7th Cir. 2005) (quoting *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995)). In the absence of an "atypical and significant" deprivation, the procedural protections of the Due Process Clause are not triggered. *Id.* Disciplinary segregation can trigger due process protections. *Marion v. Columbia Correctional Inst.*, 559 F.3d 693, 697 (7th Cir. 2009) (citations omitted). When making the determination whether an inmate is entitled to such protections, courts analyze "the combined import of the duration of the segregative confinement and the conditions endured by the prisoner during that period." *Id.* If conditions in segregation are significantly harsher than those in the normal prison environment, then a liberty interest may arise even when the duration of the segregation, standing alone, would not trigger such an interest. *Id.* at 697-98. On the one hand, "six months of segregation is not such an extreme term

3

and, standing alone, would not trigger due process rights." *Id.* at 698 (quoting *Whitford v. Boglino*, 63 F.3d 527, 533 (7th Cir. 1995)). On the other end of the spectrum, transfer to a maximum-security prison and placement in segregated confinement for an indefinite duration where virtually all sensory and environmental stimuli are denied, little human contact is permitted, and prisoners otherwise eligible for parole are disqualified from parole eligibility, taken together, impose an atypical and significant hardship within the correctional context. *Id.* at 697 (citing *Wilkinson v. Austin*, 549 U.S. 209, 224 (2005)).

West's amended complaint reiterates his original complaint allegations that he was strip searched, denied parole, denied transfer to a lower security prison, and denied Islamic services during his 120-day sentence to the hole. The order screening the original complaint addressed the first three conditions and determined that they did not implicate a liberty interest. (ECF No. 10 at 5-6.) Moreover, regarding the denial of Islamic services, the temporary denial of access to communal religious programs is not an atypical or significant deprivation warranting due process protection. *Fiorentino v. Biershbach*, 64 F. App'x 550, 553 (7th Cir. 2003) (citing *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003); *Arce v. Walker*, 139 F.3d 329, 336-37 (2d Cir. 1998); *see also Lekas*, 405 F.3d at 610, 613 (prison inmate's alleged conditions of placement in disciplinary segregation for 90 days, including inability to participate in prison programs, inability to attend church, no visits from clergy, educational programs, work programs, loss of contact visits, and reduction in personal items were not so atypical and significant as to constitute a deprivation of a liberty interest and thus did not trigger due process protections).

The only new material allegation in the Amended Complaint is West's claim that his cell in the hole was "freezing" with "poor freezing air blowing through the vent 24 hours a day[.]" (ECF No. 12 at 3-4.) Rather than consider this condition alone, the Court must look at all of the circumstances of West's confinement in order to ascertain whether he has alleged a deprivation of liberty within the meaning of the due process clause. *Kervin v. Barnes*, 787 3.d 833, 837 (7th Cir. 2015) (district court erred by evaluating separately the gravity of each punishment meted out to prisoner) (citing *Marion*, 559 F.3d at 699). In assessing whether conditions of confinement pose an atypical and significant hardship, the Court must: (1) compare the conditions of disciplinary segregation to those of discretionary segregation; (2) compare the conditions of disciplinary segregation to those in the general prison population; and (3) determine whether the disciplinary action affects the length of the inmate's sentence. *Lekas*, 495 F.3d at 608.

Regarding the first two factors, "the key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prisoner population[ ]" because any member of the general prison population may at any time find himself in segregation for a nondisciplinary reason. *Id*. at 609 (quoting *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997)).

The Court cannot determine at the pleading stage whether the alleged freezing cold cell conditions in segregation, together with the other circumstances he alleges, were sufficiently harsher than the conditions found in the most restrictive prison in Wisconsin to implicate a liberty interest under the Due Process clause. *See Marion*, 559 F.3d at 699. Because the Court must accept West's allegations as pleaded, it will accept for purposes of screening the Amended Complaint that West has asserted a liberty interest.

Once a liberty or property interest has been invoked, the Court looks to what process was due. Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner twenty four (24) hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988). Not only must the requirements of *Wolff* be satisfied, but the decision of the disciplinary hearing board must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). West's allegations that he was denied witnesses at his hearing satisfy this standard at the pleading stage.

Accordingly, the Court will allow West to proceed on a procedural due process claim against the defendants in their individual capacities.

## Conclusion

Under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the amended complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendants Lt. Swiekatowski, Capt. Bauman, Warden Scott Eckstein, and Cindy O'Donnell. Under the informal service agreement, the Court **ORDERS** those defendants to file a responsive pleading to the amended complaint within 60 days.

5

The Court **ORDERS** that the agency that has custody of the plaintiff shall collect from his institution trust account the $336.63 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The Court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The Court **ORDERS** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

The Court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

The Court advises the plaintiff that, if he fails to file documents or take other required actions by the deadlines the Court sets, the Court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The plaintiff is reminded that it is his responsibility to promptly notify the Court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the Court advised of his whereabouts may result in the Court dismissing this case without further notice.

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

The Court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated at Milwaukee, Wisconsin this 18th day of November, 2020.

BY THE COURT:

s/ Brett H. Ludwig
BRETT H. LUDWIG
United States District Judge